I think I do want to say that our court appreciates the work of pro bono warriors. You were actually selected by the clerk's office if I got this right. Is that right? I used to work at the Pennsylvania Immigration Resource Center, which provides pro bono legal services in North Pennsylvania. And then when I left there, I just maintained... Did you have this case? I did. Okay. Yes. All right. Well, this is a difficult case. It is, Your Honor. Go ahead. Why don't you start? Yes. Okay. Good morning, Your Honors. Good morning. My name is Megan Venner, and I'm here pro bono on behalf of Mr. Taylor Arroyo, and I'd like to reserve three minutes for my rebuttal time. Granted. I'm a little shorter than the last folks up here. Yeah. Okay. This case is about a man who has a severe and chronic mental illness, who more likely than not will be subjected to repeated physical and sexual assaults if they move to Jamaica. In particular, he would fall victim to violent sex trading of inmates with mental illness throughout Jamaican penal institutions. Now, let's get to the heart of this case, which is whose intent matters here? It's an excellent question. Thank you, Your Honor, to start us there. Because this is the intent analysis was the core of the legal errors committed by the Board of Immigration Appeals. And the intent has gotten confused because the two elements in the definition of torture have been conflated. The intentional inflicting and, sorry, the intentional infliction. I'm sorry, I don't think you've answered my question. Is it the guards? Is it Jamaica? Is it the prison? Whose intent matters? The perpetrators of the torturous acts. Through the facts of this case, the prison guards, as state actors, and the other inmates are both perpetrators, and so it's their intent that matters. Let me tell you what bothers me. If you're right, we know that prisoners in all the prisons, state and federal, are being sexually assaulted. If you're right, and that that's torture, don't we have to say that every prison in the United States is torturing its prisoners? They would not open up the floodgates. There are no safeguards here. Because you don't just prove that the allegedly torturous act is going to be committed. You also have to show that if it is the prison, the state actors, so let's say the prison guards. Willful blindness. Going to willful blindness, you have to show government acquiescence, and willful blindness is the standard for government acquiescence. Yeah, but let's assume, I mean, because the prisons read the same things that we read in the newspapers. Let's assume that the prison guards and the prisons and the states know that there's sexual assaults going on in the prisons. Does that mean they're each violating the torture act? I mean, how do we limit this? I mean, you're saying this is Jamaica, but how do we limit this? Well, using the hypothetical, what if this happened here in the United States? If the New York Times and the Washington Post, just like the Jamaican newspapers have done, broke the story that there's a sex trade in our prisons of inmates with mental illness happening, I would be standing here before you today asking for the court intervention to make sure that the prison authorities address this and put appropriate safeguards for anyone with a mental illness in our current prison system. Well, I don't think anybody here is suggesting that the problems you've identified are things that ought to be ignored here or in any other country. What I believe Judge Sorber is getting at, what I'm interested in knowing is, as a legal matter, is it tenable to say, as you have, rape equal torture? That is, regardless of intent, rape is, by definition, torture. And you spent some time in your briefing making that point, and you cite Zubeda for it. But Zubeda is a case that has been specifically overturned by Pierre, right? On the very point that specific intent to cause pain is necessary to a finding of torture, isn't it? So, although you kind of get it in the back of your hand, I think, in your briefing, what's wrong with the assertion that, and I don't want to get into it, I'd be very careful not to imply in any way a sort of a hard-heartedness towards rape or anything like that, but there's what somebody intends while they're doing something, even a terrible thing like rape. How can we just assume specific intent, which is what you're kind of asking us to do, and it seems to fly in the face of our pure decision? Well, it actually creeps up a little bit from the concurrence in the Pierre decision, which raised the red flag that there was concerns that in a practical implementation of Pierre, you're going to have a convoluted analysis of intent that may actually excuse some acts that, generally speaking, say constitute torture. So let me give you an example that doesn't use rape for a moment, because I think part of the reason this sits uneasy is because rape is so common. It's a subject that's so fraught with societal concern and worry, and so, yeah, good. If you can take to another point and make your point, that's great. Something a little more neutral. So, if a bank dealer refuses to give money to a bank robber, and the bank robber holds a gun next to the head of another customer and says, give it to me now or I'm going to blow the head off of this kid. The bank dealer pauses for another moment. Bam, the bank robber shoots the kid. Turns the gun then to the bank dealer's head and says, okay, now, you see how serious? Give me the money or I'm going to shoot you. So when you are analyzing intent, given the framework of intentionally inflicting severe pain and suffering for a prescribed purpose, so actually it's three separate elements right there that we're looking at on this fact pattern, the bank teller's motive, is it motive to cause pain and suffering of that bank teller? No, it's to get the money. But the threat, the act of shooting that kid and threatening the life of this bank teller is using the very real pain and suffering that's going on in that bank teller's mind as a tool to get to the ultimate purpose of getting the money. So the reason I have problems with this... I'm not sure what you're saying. Whose intent matters for this purpose? The bank teller? No, the bank robber. So the bank robber is making these threats to cause severe pain and suffering as a tool to reach the ultimate aim. And so what I'm trying to distinguish is that pain and suffering, in the definition of torture, is not the be-all, end-all goal of the perpetrator of the allegedly torturous acts. So you can't conflate the definition of fore-prescribed purpose with the mens rea of specific intent to cause severe pain and suffering. And if you just stop it there and say, this rape or, to use my analogy, this bank robbery, wasn't about causing severe pain and suffering... But your analogy has a little bit of a problem in this regard, in the... I'm going to have to go back to the rape issue and the sex trade within the Jamaican prison that you've made the heart of your briefing. The problem is you would have us say that the sex trade exists because inmates want to torture other inmates, when I think the argument is on the table that no, inmates don't want to torture other inmates. They want to gratify their own sexual pleasures. It's hedonistic. They're interested in their own pleasure, not in anybody else's pain. That doesn't make it right or good or anything remotely like it. But it also doesn't make it torture in the legally, narrowly defined sense that torture is defined in the statutes. Respond to that argument, please. I would disagree for two reasons. First of all, I think that it's... I argue that it is general knowledge that rape is not about sexual gratification. It's about power and control over the victim. But assuming I know that the motive is... the primary driver is sexual gratification, that goes to the element of whether or not the act is for a prescribed purpose. That question of why are they committing this rape is not the intentional infliction element of the definition of torture. It's separate. And I think that's the problem with the board's decision. Well, actually, the dissenting panelists, because this didn't come up in the majority decision. Do we even have jurisdiction? How did you mention it? Do we even have jurisdiction to think about that? Because this does all spring from the dissenting BIA panelists' comment. I mean, how do we have jurisdiction over that? That's not a final order of removal, is it? I have to admit that this is a bizarre flip-flop. But it flows from... That's where it was initially raised, in the dissent. However, it was raised in this case, then, or it has become relevant because of the remand. But there are findings by the immigration judge that he will be raped, he will be tortured, and that the Jamaican government or the prison authorities know about that. I mean, these are all findings. We can't touch them. Yes, Your Honor. And so there's a request for remand in this case by the government for further fact-finding... Because they want that changed. Yes, Your Honor. What's wrong with sending it back? Particularly, Judge Stoner had an excellent opinion in the Ubisoft case. I mean, doesn't it make sense to send it back to BIA to have them apply what the law is in the circuit now and do the right thing? I mean, I think the government actually agrees with you in acquiescence now, too. Doesn't it make sense to send the whole thing back and have them... Well, there's a couple things. First of all, this was already back on remand, and this issue had been looked at, and there were the same legal mistakes committed. Both times the board looked at the same facts. I didn't have the Ubisoft case either. No. Sorry. But to remand on that specifically, to say that the motive in this case is a finding of fact that has to be reviewed for clear, it's not going to fix the legal errors that the board committed. Because, first of all, they said that they reviewed for clear, pursuant to Kaplan, in this case. And by... I'm sorry. The finding of facts were not disturbed. And so to ask them to then go and look into the findings of fact to find clear error, which they said that they found that, it doesn't make sense. And they're still going to be putting... We have to say that every prisoner who is going back to a foreign country where they go to prison and they rape people will be tortured, and therefore we will defer his removal. We will defer... I mean, this is... Yeah, this is a deferral of removal. That's before us. Yes, it is, Your Honor. And how do we limit... What I don't understand is how do we limit this opinion to this case? Because I think it's much broader than this case. It's every prisoner, every immigration, every prisoner in the United States. I don't understand how you can limit this. I understand the concern and the challenge. This is an extraordinary set of facts here that is going to make Mr. Roy specifically targeted for his sex trade in a Jamaican prison. He will have to overcome a lot of hurdles in this case in terms of his burden of proof to show that it's more likely than not that he's going to be detained, to show, more likely than not, that he's going to be acting out in such a way that they're going to identify that he has a mental illness. And then the facts, and this is not true in all countries, and it's certainly not true here, the facts are that in Jamaican penal institutions there's a sex trade of persons with mental illness. And that's why... You don't think that happens in the state prisons? Not to mention the federal prisons. Yes, but I also think that it is broader. I'm unaware of a pattern where it is so narrowly focused on persons with mental illness. But the other point that I would like to make in terms of your question of how to limit this is that, with all due respect, I understand that NOAA wants floodgates to be open in immigration cases, period. But if it's called for, this is mandatory. I mean, the United Nations Convention Against Torture. And if there are a lot of people that are impacted by this, it doesn't change our obligations to protect if they've met their burden. What will happen to Mr... Suppose that deferral of removal is granted. What's going to happen to Mr. Boyd? The issue of deferral of removal, it's only specific to Jamaica. There's always the option that the government could try and remove him to a third country. Practically speaking, I doubt that that would happen. He would probably spend most of his life here. Where does he get... Does he get... He's mentally ill. Is there any possibility that he's going to get... Institutionalized. Institutionalized, thank you. Having worked with my client for several years now, this is a question that keeps me up at night. With all due respect, it's not relevant to... We think it's not relevant. ...because it's a mandatory grant. There's no discretion. However... We care about the individual as well. I think it's inbounds. Society is dangerous. He is probably going to be in and out of our prison system here in the United States. I am hoping that the Department of Homeland Security is going to work with me, since they're allowed to keep him in custody for a certain period of time after this matter is settled. That will allow us time to look for appropriate bed space and do a civil commitment, because I believe that he is going to meet the criteria for civil commitment. Okay, thank you. Thank you. May it please the Court, Jennifer Cordray, on behalf of Attorney General Eric Holder. Excuse me. You want to pick that up? Sure. Which state are you in? Attorney U.S.? U.S. Attorney General. Yes. Could you... I got something for you. You filed an answering brief that didn't respond to any of the substantive arguments made by the petitioner here, and I'm wondering if that doesn't put you all in a tough spot. Have you effectively conceded their legal arguments as to the errors that the board made? No, Your Honor, I would argue that we did respond to the merits. What we requested is remand. It's plenty clear that that's what you're asking for. I'm not saying that your brief was unclear. I'm saying that your opposing counsel said things in their brief like, look, they applied the wrong legal standard down there at the BIA. The BIA conflated the mens rea for torture and the mens rea for acquiescence. Look, they didn't apply op de loi, and they were obligated to. Look, unless I missed it completely, you didn't respond to those things. You just said, hey, you should send this back. So my question is like a civil procedure sort of one. Having declined to respond, this isn't the motion stage we're at. We're on the merits, on an appeal, having declined in the briefing to respond to the substantive legal arguments. Should the government not be held to have conceded the errors which are asserted in the opening brief? By not conceding the error, we would be deferring to the board's decision. I don't understand. I'm sorry. Basically, our argument is the board's decision. We never said that the board erred. Don't you have to say something? Don't you have a responsibility when they come out with non-frivolous arguments and say, here's how the board erred, is the government free to say nothing in response to those specific arguments? I would say yes, because in that case, it's the board's decision. Basically, we're not expanding on the board's decision by not replying to the merits. But in argument, I can argue anything with the board. Does that not make any sense? Well, you didn't argue it. That's the point. Are you suggesting that the government is free to withhold its merits arguments in the briefing and then come into court and assert them for the first time? Because that's sort of what it sounds like you're saying. I would like to not assert them for the first time. I think that what this request for remand is to not defend the board's decision at this point because we think we have applied the wrong legal standard or what is wrong now, after he's stopped. So why not just say, hey, you know what? The board erred. They're right. The board erred. No, Your Honor. We're not saying that the board erred. The board applied the law at the time. They said since the board decision, the law has been clarified, and now the board decision is no longer valid or may no longer be valid. And that is why remand should be appropriate for them to consider whether clearly a remand standard applies to specific intent. Whose intent counts, if we go back to that question? Well, it would be the intent of the Jamaican government. In other specific intent cases in this court, they never looked at the prisons. They never looked at the specific intent of the prison guard committing the allegedly torturous act. You represent the Attorney General. So what do we do about all the cases in the prisons where there is rape going on of mentally ill prisoners? I know plenty of them. Well, if that is... There was a specific case that would fall under tax, deferral of removal, and here... Well, that's for immigration cases, but I'm asking a broader question. It's not only immigration cases. They're all the prisons. Whose intent matters? I mean, if rape is torture, and was it Justice Blackman or Black or somebody who said rape is torture? One of the Supreme Court justices said that. Isn't that within the realm of the Attorney General to look into? Look into whether rape is torture and... Well, and what's happening in the prisons, both in the federal prisons and in the state prisons? This is not an issue that's limited to immigration. That's my concern. Correct, Your Honor. It's an issue of prison conditions in general, which is why it has nothing to do... Why it would not... Not has nothing to do, but why it would not... under cap protection because it has no specific intent. It's a general condition. What do you mean it has no specific intent? If rape is torture and the Attorney General knows that rape is going on in the prisons, the Attorney General doesn't have a responsibility to do something about that? No, the Attorney General would have a responsibility, but does the Attorney General then have the specific intent to torture every inmate that's put in the... Well, we have willful blindness. Right, that's the conflation argument that your opposing counsels made, right? They've said in the BIA's analysis it mistook the specific intent required for active torture with the state of mind that's necessary for a finding of willful blindness and a cap claim under willful blindness. Are they right or wrong about that? Because that's another one of those things you didn't address in your interview. I thought you could see that. They were right about that. I think... They were right about what? Because I wasn't sure I understood. They were right that the BIA wrongly conflated the mens rea for active torture and the mens rea for willful blindness, right? No. The BIA applied PIERRE, which said that willful blindness is not specific intent. The BIA did do one thing wrong. In its decision, it kept saying that willful blindness does not equate, does not constitute acquiescence. It meant to say specific intent. And it cited PIERRE and Mother Janie and other specific intent cases. And therefore, it's more of a misstatement than a misapplication. It's clearly an error of law to say willful blindness is not acquiescence, right? Ah, yes. Okay. That's correct. Can I ask you a question about your request for remand? You said, and I'll quote you from page 17 of your brief, what did the immigration judge's finding regarding specific intent? Was a finding of fact subject to clear error review that's your language, is something the board should be able to analyze in light of use of auth. So, we have the author, use of auth, right here, and I'm sure she'll correct me if I'm wrong, but I understood use of auth to say among other things that motive is classically a question of fact, right? Correct. Okay. So, and isn't it fair to say that specific intent is a subset of motive? It's a particular kind of mindset within the overall mental state we call motive, isn't it? Yes. Okay. So, if that's true, and we have already said as a matter of law that motive, the broad category, is an issue of fact, why would it be necessary to send this matter back to the BIA for the BIA to decide whether a subset of the broad category is also a question of fact? Isn't specific intent necessarily a question of fact based on what we said in use of auth? Well, we're asking that you bring it to the board, but if you did not, and you just found that the board, that specific intent is a factual question, you'd still have to bring it to the board to have them apply the clear error review standard at that point. So, we're just asking you, in one proactive step, to bring it to the board. It's appropriate under Ventura that the board have the first opportunities to make the determination of the use of auth. When you say the determination, you mean the clear error review. As to the legal principle that specific intent is a question of fact, I don't hear you arguing against that. I'm not arguing against that. I'm saying that the proper course of action would be to bring it to the board. Yes, it's kind of a redundant step. Okay. So, if we accept that specific intent is a question of fact, and in this case, the board has already endorsed the immigration judge's findings of fact and said, there is a sex trade going on, all the things that your opposing counsels lay out, this person will go to Jamaica, they won't take their medication, they'll end up in prison, they'll be identified as mentally ill, they'll be targeted for sexual abuse, rape, physical torture, etc. If the BIA has already accepted all those findings of fact from the immigration judge, what's left to be done? Why would we send it back? So, at that point, they would have to find that all those facts do not necessarily show specific intent. So, I mean, it's back to the question of whether all of those things show that the Jamaican authorities specifically intend to torture Roy. Do they have to show that the Jamaican authorities would specifically intend to torture Roy, or is it enough for them on the basis of the fact that they've got to say Jamaican authorities will turn a blind eye and acquiesce in the torture of Roy? There it is. There has to be a specific intent. That comes before acquiescence. They're two different requirements. Right, and the specific intent here is the specific intent of the other prisoners to engage in... Or the guards. Or the guards to engage in rape to torture. I would argue against that. And even in Rivera, where the case that's been... Sorry, the case that's been overruled because it used global blindness, instead of specific intent, this court framed the question as to whether this HIV-positive amputee who held a politically unpopular belief, and where they found that prison guards would mistreat him for those reasons, they still analyzed the specific intent of authorities putting him in prison and knowing that he would face those types of mistreatment. So it's the government's position that in order to make out a CAD claim, it's not enough for a petitioner to say, hey, I made a factual record that I will be tortured if you send me back and they put me in prison. The petitioner has to show that the government will put me in prison to torture me. Is that the argument you're making? Yes, Your Honor. Really, it's not enough that they put him in prison and that he has problems there and that they're willfully blind to those problems. You've got to prove that the Jamaican authorities put him in prison with the intent that he be tortured. Yes, Your Honor, because there are a lot of acts that occur in prisons. Prison conditions in general are deplorable. Sure, but where's your authority for that? Because, again, where's your authority for that? Well, it's in Pierre, where this court talked about the deplorable conditions in Haiti and that the specific petitioner in that case wouldn't get the medical attention that he needed. But in Pierre, we didn't say you've got to imprison him to torture him. Didn't we say it has to be the case that the things that are happening in the prison are things that the government intends to be torture? I don't understand the difference. Well, the government here doesn't intend the conditions to be torture. It, in fact, has taken steps to try and help the mentally ill. Doesn't anybody besides me care about the prisons in this country? Why are we limiting all of this to the immigration removal issue? I mean, if rape is torture and if we know that prisoners are getting raped in the state and maybe federal prisons, then doesn't somebody have a responsibility to do something about that? Yes, you're right. So who is the somebody? I guess the fair answer to that probably would be certainly, but it doesn't come up in the context of this specific case, except to the extent that Judge Sorger is rightly pointing out that what we say here may have ramifications beyond this case, right? Correct, Your Honor, yes. And it will come to the attention of the Attorney General, because you'll give it to him. He was here yesterday. Was he? He said so in the paper. This case has no boundaries. It speaks to prison conditions everywhere. I think it's true to say that those things happen here as well and that maybe they're not dealt with here, but it doesn't pertain to these facts. So you want us to send it back? Yes, yes. The government is requesting that you send it back. And you tell us that he will be, well, she tells us, he will be civilly, they'll take steps to civilly commit him. Because he's dangerous. This man is dangerous. Correct. Yeah, I think we would have to work at whatever point, if he does stay in the U.S., to find out, to figure out a way to civilly commit him. Thank you. I thought of you as I was reading your brief and thinking, you're practicing law by yourself, out of your house? Actually, I'm doing immigration policy with the Lutheran Immigration Refugee Service of Baltimore, Maryland. So I've stepped out of litigation, except for a few cases still remaining. Could you pull the microphone toward me? Can you help us out? Yes. I want to quickly address a couple brief points and then get back to setting some boundaries here. So Punte's not going to do it? Not going to do it for my client. And this is particularly troubling in the discussion that Judge Jordan was just having with my opposing counsel, is that this is intent. She doesn't really seem like you're opposing. I don't think you're barely opposing each other. True, in fact. Specific intent is not a factual question. Specific intent is the legal standard applied to a set of facts about the intent. But doesn't Yusupov say specifically that motive to rape is a fact question? Yes, motive. But specific intent is the legal term of art measuring whether the motive needs the required mens rea to constitute an act of torture. So I want to be careful with the language. Isn't specific intent a kind or category of motive? It describes a sort of motive, does it not? Yes, but as Catlin tried to do, and the devil's in the details here, in Catlin's you have to separate the findings of fact underlying the legal analysis imposed upon it. And so whether or not the motives and the state of mind of the perpetrators rises to the level of specific intent is a legal question based on the certain findings of fact regarding that state of mind. I don't understand that, but maybe somebody else can. At any rate, I would agree that because the findings of fact were detailed down below by the immigration judge and clear error review did take place at the board, we wouldn't get anywhere with a remand. So what do you want us to do? I want, just like in King, where the court found that clear legal errors could be corrected and cat relief granted by this court, that's what I would like to see here because there are clear legal errors committed by the Board of Immigration Appeals which haven't been contested. So what should we do? That doesn't answer the question. We should just defer? Defer my client's removal to Danica. And this case is limited because every immigration case talking about prison rape is going to have to show not just that there's some rape going on in the prisons back home, but it's more likely than not that that particular individual is going to be raped. It's going to be pretty easy to show. I think anecdotally, considering the rape is endemic in prisons, they don't have to prove it. I've been on this court for 33 years. That's going to be easy to show. But if they do prove it, then you still have two factors under consideration. And because it's in prison, actually, if we keep it to there, I would argue that there is going to be state action involved. And so... So you have a second 1983 claim, but so what? I mean, we're so interested in what we do. But we still have an obligation. And even though we're concerned about the number of cases that may come, we cannot, because we're concerned about the volume of cases, set aside our obligations under the Convention Against Torture. This triggers a mandatory action by the United States government. Thank you. Thank you both. This is my first oral evidence. It was an education. Thank you.